Slip Op. 18-11

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **FORMER EMPLOYEES OF GEOKINETICS, INC.,** | |
| **Plaintiffs,** | **Before: Claire R. Kelly, Judge** |
| **v.** | **Court No. 16-00057** |
| **UNITED STATES SECRETARY OF LABOR,** | **PUBLIC VERSION** |
| **Defendant.** | |

## <u>OPINION</u>

[Sustaining the U.S. Department of Labor's second remand determination denying Plaintiffs' certification as a class of workers entitled to Trade Adjustment Assistance and Alternative Trade Adjustment Assistance benefits.]

Dated: February 16, 2018

<u>Gregory Carroll Dorris</u>, Pepper Hamilton LLP, of Washington, DC, for plaintiffs.

<u>Agatha Koprowski</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant.  With her on the brief were <u>Chad A. Readler</u>, Acting Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Claudia Burke</u>, Assistant Director.  Of Counsel on the brief was <u>Tecla A. Murphy</u>, Attorney Advisor, Employment and Training Legal Services, Office of the Solicitor, U.S. Department of Labor.

Kelly, Judge:   Before the court for review is the U.S. Department of Labor's

("Department" or "Labor") second remand determination filed pursuant to the court's order

in <u>Former Employees of Geokinetics, Inc. v. United States Secretary of Labor</u>, 41 CIT __,

__, 219 F. Supp. 3d 1392, 1410 (2017) ("<u>Former Employees</u>").  <u>See</u> <u>Notice of Negative

Determination on Second Remand</u>, Oct. 16, 2017, ECF No. 41-1 ("<u>Second Remand

Results</u>").  On second remand, Labor conducted further investigation and reexamined its

remand determination denying Plaintiffs' petition for certification for Trade Adjustment

Assistance ("TAA") and Alternative Trade Adjustment Assistance ("ATAA").  See id. at 5–

14; Second Remand Investigative Report, TA-W-90, 092 at SAR583–99, Oct. 16, 2017,

ECF No. 39-2 ("Second Remand Investigative Report").[1]   Labor continued to deny

certification to Plaintiffs as a class of workers entitled to TAA and ATAA benefits under

section 222(c)(2) of the Trade Act of 1974, as amended, 19 U.S.C. § 2272(c)(2) (2012).[2]

See Second Remand Results at 13–14; Second Remand Investigative Report at

SAR598–99.  For the reasons that follow, the Second Remand Results comply with the

court's order in Former Employees, are supported by substantial evidence, and are

sustained.

## BACKGROUND

The court assumes familiarity with the facts of this case as discussed in the

previous opinion, see Former Employees, 41 CIT at __, 219 F. Supp. 3d at 1394–99, and

here recounts the facts relevant to the court's review of the Second Remand Results.

---

[1] On October 16, 2017, Defendant filed confidential and public versions of the documents constituting the Supplemental Administrative Record for the second remand proceedings.  See Def.'s Notice of Filing of the Conf. Record, Oct. 16, 2017, ECF No. 39; Def.'s Notice of Filing of the Public Record, Oct. 16, 2017, ECF No. 40.  An index of these documents can be found at ECF No. 39-1 and ECF No. 40-1, respectively, and the record documents can be found at ECF No. 39-2 and ECF No. 40-2, respectively.  The documents from the supplemental administrative records ("SAR") are identified by the title and SAR page numbers assigned by Labor in these indices.

[2] All further references to the Trade Act of 1974, as amended, are to Title 19 of the U.S. Code, 2012 edition.

Plaintiffs are a group of former employees from the survey department of Geokinetics, Inc. ("Geokinetics"), a company located in Houston, Texas that is engaged in seismic oil and gas exploration, who were separated from the company as of January 31, 2015.  See Petition, Geokinetics, Houston Texas, Facsimile, dated July 31, 2015 at 3:07pm at AR1–5, Sept. 16, 2016, ECF No. 16-1 ("Petition").[3]  On July 31, 2015, Plaintiffs' petition for TAA and ATAA benefits was filed with the Department of Labor, in which Plaintiffs sought to apply for TAA and ATAA benefits as a group of eligible workers pursuant to 19 U.S.C. § 2272.  See id.; see also 19 U.S.C. § 2272.  The Petition alleged that Plaintiffs' separations from Geokinetics result from a decision taken by the Organization of the Petroleum Exporting Countries "to increase oil production [which] caused widespread lay-offs and job cuts in the Energy Industry."  Petition at AR2.

On September 23, 2015, Labor's Office of Trade Adjustment Assistance ("OTAA") began its investigation into Plaintiffs' petition pursuant to 19 U.S.C. § 2272 by requesting information from Geokinetics related to the company's business, sales, and Plaintiffs' terminations.  See Email and attached Business Data Request, ETA-9043A, between [Ms. A], Program Analyst, DOL, OTAA and [Geokinetics official], dated Sept. 23, 2015 at 4:18pm at AR18–28; Email and attached Business Data Request, ETA-9043A, between [Ms. A], Program Analyst, DOL, OTAA and subject firm company official, [Mr. C],

---

[3] On September 16, 2016, Defendant filed confidential and public versions of the documents constituting the Administrative Record for the remand proceedings.  See Def.'s Notice of Filing of the Conf. Record, Sept. 16, 2016, ECF No. 15; Def.'s Notice of Filing of the Public Record, Sept. 16, 2016, ECF No. 16.  An index of these documents and the documents themselves can be found at ECF No. 15-1 and ECF No. 16-1, respectively.  The documents from the administrative records ("AR") are identified by the title and AR page numbers assigned by Labor in these indices.

Geokinetics, dated Sept. 23, 2015 at 4:18pm at AR29–40; <u>see</u> 19 U.S.C. § 2272.  In early

November 2015, Geokinetics returned the questionnaire providing information regarding

Plaintiffs' worker group and information relating to the company's business, sales, and

the termination of Plaintiffs, to the DOL's OTAA.  <u>See</u> Email between [Ms. X], Program

Analyst, DOL, OTAA, ("DOL Analyst") and [Ms. Y], Geokinetics' Vice President, General

Counsel, and Corporate Secretary ("Geokinetics' General Counsel") attached

Geokinetics Inc. Business Data Request signed Nov. 3, 2015, Geokinetics Corporate

Legal Structure charts, and two emails, with attachments, from the 2016 remand

investigation, May 02, 2017 4:53 PM at SAR46–54 (providing a copy of Geokinetics'

original Business Data Request ("BDR") questionnaire responses) ("Original BDR

Resp.").

         In its response to the original questionnaire, Geokinetics attributed Plaintiffs'

terminations to a decline in the oil and gas sector to which Geokinetics provides services,

caused by "a sustained collapse in the price of oil," resulting in a corresponding decrease

in "exploration activity, which has greatly reduced the need for our highly specialized

services."  Original BDR Resp. at SAR49.  On January 16, 2016, Labor issued a negative

determination denying Plaintiffs' petition for certification as a worker group eligible for TAA

and ATAA benefits.  <u>See</u> Investigative Report, TA-W-90, 092 at AR90–92 ("Original

Investigative Report"); [Geokinetics] Negative Determination Regarding Eligibility To

Apply for Worker Adjustment Assistance at AR93–98 ("Original Negative Determination").

Labor found that: (1) imports of services like or directly competitive with the services

supplied by Geokinetics had not increased; (2) Geokinetics did not shift the supply of

seismic data acquisition, or like or directly competitive services, to a foreign country or acquire such services from a foreign country; (3) Geokinetics is not a supplier of services to a firm that employs workers that have been certified as eligible for TAA or ATAA benefits; and (4) Geokinetics does not act as a downstream producer to a firm that employed a group of workers who had been certified as eligible for TAA or ATAA benefits. See Original Negative Determination at AR97–98.

On April 1, 2016, Plaintiffs commenced this action against the Department of Labor.  Summons, Apr. 1, 2016, ECF No. 1.  On June 2, 2016, Defendant, unopposed by Plaintiffs, requested remand to enable Labor to "conduct further investigation and redetermine whether certain current and former employees of Geokinetics are eligible for certification for [TAA] benefits."   Unopposed Mot. for Voluntary Remand at 1, June 2, 2016, ECF No. 8.  In its motion, Defendant acknowledged that "Labor did not address whether there has been an increase in relevant imports of articles," as the agency is required to do pursuant to 19 U.S.C. § 2272(a)(2)(A)(ii)(I)–(III).  Id. at 2–3; 19 U.S.C. § 2272(a)(2)(A)(ii)(I)–(III).  The court granted Defendant's motion for remand.  See Order, June 3, 2016, ECF No. 9.

During the first remand investigation, Labor requested from Geokinetics new employment, sales, and import data for the years 2013 and 2014, as well as for the periods January through June 2014 and January through June 2015.  See Email and attached Business Data Request, between [DOL Analyst] and [Geokinetics' Counsel], dated July 05, 2016 5:47pm at AR122–23.  Labor's questionnaire specifically requested: (1) a description of articles manufactured by the subject firm, their end uses, and whether

the articles are incorporated as components into another article; (2) information on

whether the subject firm imported or acquired from a foreign country articles like or directly

competitive with the articles it produces; (3) information on whether the subject firm

imported articles that incorporate an article like or directly competitive with the articles it

produces; (4) information on whether the subject firm shifted production of articles like or

directly competitive with articles it produces to another country or whether such a shift in

production is scheduled; (5) information on whether the firm experienced a decline in

sales to a customer located outside the United States; and (6) information on whether the

subject firm conducts business with any firm whose workers have been certified under

the TAA program.  See id. at AR124–31.  Geokinetics provided the majority of the

information requested.  See id. at AR125–32.

On September 16, 2016, Labor filed its first remand determination, in which it

continued to deny Plaintiffs' certification as a class of workers eligible to apply for

adjustment assistance.  See [Geokinetics, Inc.] Notice of Negative Determination on

Remand at 8, Sept. 16, 2016, ECF No. 14-1 ("First Remand Results"); see also [First]

Remand Investigative Report, TA-W-90, 092, Geokinetics at AR153–60, Sept. 16, 2016,

ECF No. 15-1 ("First Remand Investigative Report").  In the First Remand Results, Labor

determined that: (1) a significant number or proportion of workers at the subject firm is

totally or partially separated, or threatened with such separation; (2) industry data shows

that aggregate imports of oil and gas during the relevant period decreased; (3)

Geokinetics' sales/production increased during the relevant period; (4) Geokinetics did

not shift the production of articles like or directly competitive with oil to a foreign country;

(5) Geokinetics is not a supplier to a firm that employs workers that have been certified

as eligible for TAA or ATAA benefits; and (6) Geokinetics does not act as a downstream

producer to a firm that employed a group of workers who had been certified as eligible for

TAA or ATAA benefits.  First Remand Results at 6–7 (citing Original Investigative Report

at AR90–92).

In Former Employees, the court determined that the First Remand Results were

not supported by substantial evidence.  Former Employees, 41 CIT at __, 219 F. Supp.

3d at 1394, 1410.  Specifically, the court held that the remand determination must be

remanded again on the grounds that

> (1) Labor has not explained why its practice for comparing a firm's sales
> data is reasonable; (2) Labor failed to consider whether like imports
> increased absolutely, or explain why it was reasonable not to examine
> whether like imports had increased; and (3) Labor failed to consider whether
> like imports had shifted to foreign countries, or explain why it was
> reasonable not to examine whether like imports had shifted to foreign
> countries.

Id., 41 CIT at __, 219 F. Supp. 3d at 1394.   The court also remanded Labor's

determination not to certify Plaintiffs as secondary workers eligible for TAA benefits.  Id.

The court determined that Labor had not provided or explained any uniform or

defined practice by which it selects the appropriate time period to analyze whether the

subject firm's sales decreased absolutely under the increased imports path of the statute.

Id., 41 CIT at __, 219 F. Supp. 3d at 1401; see 19 U.S.C. § 2272(a)(2)(A)(i).  The court

found this lack of explanation particularly concerning here, where "Labor solicited

information covering different periods in its initial investigation and on remand without

explanation for or acknowledgment of the difference."  Id., 41 CIT at __, 219 F. Supp. 3d

at 1401 (noting that, in the investigation, Labor requested sales data for January through September 2014 and January through September 2015 and, on first remand, requested sales data for January through June 2014 and January through June 2015).  The court also highlighted that Labor had "defin[ed] its relevant time periods to exclude the months of July of 2014 and 2015, . . . [without] explain[ing] how it defines these periods for purposes of assessing whether sales of the subject firm have decreased, nor has it explained why the periods compared here are reasonable." Id. (citation omitted).  The court ordered that, on second remand, "Labor must explain how it determines the relevant periods for comparing sales data and explain why its practice is reasonable in light of its statutory mandate to determine whether the sales or production, or both, of the subject firm have decreased, or reconsider its determination." Id., 41 CIT at __, 219 F. Supp. 3d at 1401–02.

Regarding imports of like articles, the court determined that, while the statute "instructs Labor to treat oil and natural gas exploration and drilling services as articles directly competitive with imports of oil and natural gas," 19 U.S.C. § 2272(c)(2)(B), and the agency properly considered here whether imports of articles of oil and gas increased, the statute also requires that the agency consider whether imports of like articles have increased. See Former Employees, 41 CIT at __, 219 F. Supp. 3d at 1402–06; 19 U.S.C. § 2272(a)(2)(A)(ii).  The court expressed concern as to why Labor nonetheless had not considered whether imports of seismic data services, as imports of like articles, had also increased. See Former Employees, 41 CIT at __, 219 F. Supp. 3d at 1405–07.  The court ordered Labor on second remand to "explain why it is reasonable to consider only oil and

gas imports, which the statute instructs are directly competitive with oil and natural gas exploration and drilling services, and therefore not like imports, in evaluating Plaintiffs' eligibility for TAA certification." Id., 41 CIT at __, 219 F. Supp. 3d at 1403.

Regarding any shifts in production of like articles, the court determined that "[t]he record lacks evidence to support a determination that Geokinetics did not shift production or services to a foreign country, and it is unclear whether Labor considered a shift by Geokinetics in seismic data services to foreign countries." Former Employees, 41 CIT at __, 219 F. Supp. 3d at 1407.  The court emphasized that the statute requires Labor to consider whether there has been a shift in the production of like or directly competitive articles to a foreign country, but that Labor, on first remand, "did not consider whether seismic data services (presumably a like product to the articles produced by Geokinetics) had been shifted to or been acquired from a foreign country," and did not "explain why it was reasonable not to make such an inquiry." Id., 41 CIT at __, 219 F. Supp. 3d at 1408 (citation omitted).  The court ordered Labor to, on second remand, "clarify its approach to evaluating whether Geokinetics shifted services to a foreign country, explain why it is reasonable to consider only directly competitive articles, explain what record evidence supports its conclusion, or reconsider its determination." Id.

Finally, regarding eligibility for TAA benefits as secondary workers, the court determined that Labor's conclusion that Geokinetics is not a supplier or downstream producer to a firm that employed a group of workers who received certification of eligibility for adjustment assistance, and its decision not to certify Plaintiffs as secondary workers eligible for TAA benefits, was unsupported by substantial evidence, see Former

Employees, 41 CIT at __, 219 F. Supp. 3d at 1408–10, because the decision was "based upon Geokinetics' incomplete responses" to the questionnaire the firm received from Labor. See id., 41 CIT at __, 219 F. Supp. 3d at 1409.  Specifically, the court emphasized that, because Geokinetics had not answered Labor's question inquiring whether the company "conducts business with a firm whose workers have been certified under the TAA program," Labor's conclusion that Geokinetics had not conducted business with such firms was not reasonable.  Id. (citation omitted).  The court ordered Labor to, on second remand, "explain what record evidence supports a conclusion that Geokinetics is not a supplier or downstream producer to a firm whose workers were certified for TAA benefits as primary workers, what supports a determination that Geokinetics' loss of business did not contribute importantly to Plaintiffs' separation, or reconsider its determination."  Id.

On October 16, 2017, Labor issued the second remand determination.  See Second Remand Results.  Responding to the court's concerns that the agency did not explain its method for selecting the time period for assessing whether there had been a decrease in sales or why its selection of time periods in this case was reasonable, Labor requested additional sales data for July 2014 and July 2015.  See id. at 6.  Labor explained that it had not previously requested sales data for July 2014 and July 2015 because its standard practice is to collect data "through the month that just ended at the time that the petition is filed," which in this case was July 2015.  Second Remand Investigative Report at SAR591.  Nonetheless, because the court's "remand order reflected an interest in obtaining more data on the subject firm's sales by extending the

period under review through the month of July," Labor requested data for those months in the second remand investigation.  Id.

Regarding the investigation into an increase in imports pursuant to 19 U.S.C. § 2272(a)(2)(A), Labor noted that it does not agree with the court that 19 U.S.C. § 2272(c)(2) should be interpreted to require that imports of oil and gas exploration and drilling services, including seismic data services, should be treated as like imports for the purposes of the increased imports analysis.  Second Remand Investigative Report at SAR592–93.  Nonetheless, Labor noted that, here, the record evidence demonstrates that Geokinetics did not import seismic data services.  See id. at SAR593–94.  Labor also explained that the nature of seismic data services is such that they are provided primarily on location at the client site, such that "import of these services would involve only those aspects of the work that can be accomplished remotely."  Second Remand Investigative Report at SAR595 (citation omitted).

Regarding the investigation into a shift in production or supply pursuant to 19 U.S.C. § 2272(a)(2)(B), Labor again determined that Geokinetics had not shifted its services to another country or imported or acquired like or directly competitive services from a foreign country.  Second Remand Investigative Report at SAR595; see also 19 U.S.C. § 2272(a)(2)(B).

Finally, regarding the analysis of secondary worker eligibility, Labor concluded that separated workers are not eligible to be certified as adversely affected secondary workers pursuant to 19 U.S.C. § 2272(b) because "the investigation revealed that [Geokinetics] is not a Supplier nor does it act as a Downstream Producer to a firm that employed a group

of workers who received a certification of eligibility under []19 U.S.C. § 2272(a)," adding

that, "[i]n fact, none of [Geokinetics'] customers were [t]rade certified." Second Remand

Results at 13.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction pursuant to 28 U.S.C. § 1581(d)(1) (2012) and 19 U.S.C.

§ 2395(a).  The agency's determination must be sustained if it is supported by substantial

evidence in the administrative record and is otherwise in accordance with law.  See 19

U.S.C § 2395(b) (providing that the Court may remand Labor's findings of fact to take

further evidence for good cause); see also 28 U.S.C. § 2640(c) (2012) (making an action

to review a determination by Labor, pursuant to 19 U.S.C. § 2273, reviewable under the

standard provided by 19 U.S.C. § 2395); see also 19 U.S.C. § 2395.  Further, "[t]he results

of a redetermination pursuant to court remand are also reviewed 'for compliance with the

court's remand order.'" Xinjiamei Furniture (Zhangzhou) Co. v. United States, 38 CIT __,

__, 968 F. Supp. 2d 1255, 1259 (2014) (quoting Nakornthai Strip Mill Public Co. v. United

States, 32 CIT 1272, 1274, 587 F. Supp. 2d 1303, 1306 (2008)).

## DISCUSSION

The court remanded Former Employees for Labor to: (1) explain its practice for

determining the relevant time period for assessing whether Geokinetics' sales had

decreased; (2) consider whether like imports increased absolutely, or explain why it was

reasonable not to examine whether like imports had increased; (3) consider whether like

imports had shifted to foreign countries, or explain why it was reasonable not to examine

whether like imports had shifted to foreign countries; and 4) explain its determination not

to certify Plaintiffs as secondary workers eligible for TAA benefits.  Former Employees,

41 CIT at __, 219 F. Supp. 3d at 1394, 1410.  The court will examine, in turn, Labor's

determinations in the second remand proceeding on each of these issues.

## I.   Sales Data for Assessing Any Decrease in Sales

In Former Employees, the court stated:

> . . . Labor fails to provide any indication that it has a defined practice to
> compare sales data for purposes of determining whether sales decreased
> to determine eligibility for TAA benefits.  Moreover, in this investigation
> Labor solicited information covering different periods in its initial
> investigation and on remand without explan[a]tion for or acknowledgment
> of the difference.  Labor may have a reason for defining its relevant time
> periods to exclude the months of July of 2014 and 2015, but Labor has not
> explained how it defines these periods for purposes of assessing whether
> sales of the subject firm have decreased, nor has it explained why the
> periods compared here are reasonable.  On remand, Labor must explain
> how it determines the relevant periods for comparing sales data and explain
> why its practice is reasonable in light of its statutory mandate to determine
> whether the sales or production, or both, of the subject firm have decreased,
> or reconsider its determination.

Former Employees, 41 CIT at __, 219 F. Supp. 3d at 1401–02 (internal citations omitted).

Certain workers who have been affected by an increase in foreign imports or a

shift in production or services to a foreign country are eligible for certification by Labor for

TAA benefits, if Labor determines that certain statutory requirements are met.  19 U.S.C.

§ 2272(a).  First, "a significant number or proportion of the workers in such workers' firm"

must have been separated or be "threatened to become" separated from the firm.  Id.

§ 2272(a)(1).  If such separation or threat of separation has been established, there are

then two possible paths to certification: 1) the increased imports path, id. § 2272(a)(2)(A),

and 2) the shift in production or services path.  Id. § 2272(a)(2)(B).  Under the increased

imports path, Labor must determine: that the firm's U.S. sales or production decreased absolutely; that "imports of articles or services like or directly competitive with articles produced or services supplied" by the subject firm increased; and that such increase "contributed importantly" to the decrease in sales or production of the subject firm and the workers' separation or threat of separation.  Id. § 2272(a)(2)(A)(i)–(iii).  Labor must make an affirmative determination on each of these three elements to certify the workers under the increased imports path.  See id.

The statute does not define the time periods for Labor to analyze whether a subject firm's sales or production "have decreased absolutely" under the increased imports path. See 19 U.S.C. § 2272(a)(2)(A)(i).  In Former Employees, the court remanded on this issue because Labor appeared not to have a consistent practice for determining the relevant time period for assessing whether there was or was not an absolute decrease in sales or production.  Former Employees, 41 CIT at __, 219 F. Supp. 3d at 1401–02.  The court noted its concern that, in the original investigation, Labor had requested that Geokinetics report sales data from January through September of 2014 and January through September of 2015, while in the first remand proceedings Labor requested sales data from January through June of 2014 and January through June of 2015.  Id.  As Labor did not explain the discrepancy in the dates requested, the court ordered that, on remand, Labor must articulate "how it determines the relevant periods for comparing sales data and explain why its practice is reasonable in light of its statutory mandate."  Id.

Here, on second remand, Labor included sales data for the months of July 2014

and 2015 in the representative base period and relevant investigative period, respectively,

explaining:

> The Department's general practice is to collect sales and employment data
> through the month that just ended at the time that the petition is filed.
> However, the USCIT remand order reflected an interest in obtaining more
> data on the subject firm's sales by extending the period under review
> through the month of July. Therefore, for the second remand investigation
> the Department adopted a representative base period of August 2013
> through July 2014 and relevant time period of August 2014 through July
> 2015 for sales and employment as well as imports according to 29 C.F.R.
> [§] 90.2.

Second Remand Investigative Report at SAR591; see Second Remand Results at 12.

"During the second remand investigation, the Department collected additional information

from the subject firm including but not limited to domestic monthly sales data for the

periods of 2013, 2014, and January through July 2014, and January through July 2015."

Second Remand Results at 6 (citation omitted).  Labor has complied with the court's

request to further explain its methodology for determining the applicable base and

representative periods, and satisfied the request to either explain the exclusion of data

for the months of July 2014 and July 2015 or include data for those months in its review

on second remand.  See Former Employees, 41 CIT at __, 219 F. Supp. 3d at 1401–02.

Labor's determinations on this issue are therefore sustained.

Plaintiffs contend that the determination on second remand is unsupported by

substantial evidence because Labor "did not directly or even indirectly" address the

court's request that Labor "'explain how it determines the relevant periods for comparing

sales data and explain why its practice is reasonable in light of its statutory mandate to

determine whether the sales or production, or both, of the subject firm have decreased, or reconsider its determination.'" Comments of Pls. the Former Employees of Geokinetics, Inc. on Second Remand Results at 3, Nov. 27, 2017, ECF No. 45 ("Pls.' 2nd Remand Comments") (quoting Former Employees, 41 CIT at __, 219 F. Supp. 3d at 1401–02). Labor does explain that its "general practice is to collect sales and employment data through the month that just ended at the time that the petition is filed." Second Remand Investigative Report at SAR591; see also Second Remand Results at 12. The court's concern in Former Employees, underlying its request that Labor clarify how it selects the relevant time frames for examination, was that the unexplained discrepancy between the periods examined in the original investigation and the first remand suggested that Labor does not have an established practice for determining the relevant time periods. Former Employees, 41 CIT at __, 219 F. Supp. 3d at 1401. However, Labor has clarified on second remand that it does indeed have a general practice. See Second Remand Investigative Report at SAR591; see also Second Remand Results at 12. Labor also clarified the reason for the date range discrepancy between the original investigation and the first remand, explaining that "[t]he initial investigation inadvertently requested employment and sales data for the year-to-date and comparable period through the month of September which is inconsistent with the Department's practice regarding the periods for which this data is requested." Second Remand Investigative Report at

SAR584.[4]  Plaintiffs are correct that Labor did not explain "how it determines the relevant periods for comparing sales data and explain why its practice is reasonable in light of its statutory mandate to determine whether the sales or production, or both, of the subject firm have decreased."  Pls.' 2nd Remand Comments at 3 (quoting Former Employees, 41 CIT at __, 219 F. Supp. 3d at 1401).   Nonetheless, here, on second remand, Labor explained the date range discrepancy and confirmed that it does have an established practice for determining the relevant base and investigative periods to review.  Plaintiffs have not argued that Labor does not have such an established practice, or that the established practice of using the one-year period immediately prior to the petition date is unreasonable.

Further, as discussed above, Labor must determine that the workers' firm's sales or production, or both, decreased absolutely in order to certify eligibility pursuant to the increased imports path.  19 U.S.C. § 2272(a)(2)(A).  Here, although "[t]he monthly sales data provided revealed monthly fluctuations during the representative base period and the relevant time period," Labor found an overall increase in sales over the course of both the base period and investigated period.   Second Remand Investigative Report at SAR594–95; see Remand Results at 7.   Accordingly, because Labor reasonably determined that the sales did not decrease absolutely, the first element of eligibility of the

---

[4] Defendant clarifies that, "[c]ontrary to the Court's inference, Second Remand Order, 219 F. Supp. 3d at 1401-02, the requests for differing time periods were unrelated to whether the questionnaire requested products or services data."  Def.'s Resp. Pls.' Comments on [Labor]'s Second Remand Results at 13, Dec. 12, 2017, ECF No. 47 ("Def.'s 2nd Remand Comments").

increased imports path pursuant to 19 U.S.C. § 2272(a)(2)(A) has not been satisfied. The court need not reach the other requirements of the increased imports path.[5]

## II. Shifts in Production of Like Articles

In Former Employees, the court remanded Labor's negative determination under the shift in production or services path, finding the determination to be unsupported by substantial evidence. Former Employees, 41 CIT at __, 219 F. Supp. 3d at 1407–08. The court concluded that Labor's determination that there had not been a shift in production or services was unsupported by substantial evidence because, as with the determination pursuant to the increased imports path, it was not clear that Labor considered whether there was a shift in production of seismic data services in foreign countries or acquisition of seismic data services from foreign countries. See id., 41 CIT

---

[5] In Former Employees, the court also remanded on the issue of increased imports because, on first remand, in considering whether there had been an increase in imports of like or directly competitive articles, Labor considered only imports of oil and natural gas, which the statute instructs are directly competitive to the articles produced by Geokinetics. See Former Employees, 41 CIT at __, 219 F. Supp. 3d at 1402–07; 19 U.S.C. § 2272(c)(2)(A). Although Labor had not found an increase in imports of oil and natural gas, because the statute requires that Labor also consider increases in imports of "like" articles, the court remanded the issue for Labor to explain why it is reasonable to not consider whether there has been an increase in imports of seismic data services, which would be "like" articles, as required by the statute. Id., 41 CIT at __, 219 F. Supp. 3d at 1402–07; see 19 U.S.C. §§ 2272(a)(2)(A)(ii), (c)(2)(A).

On second remand, Labor complied with the court's order by considering whether there had been an increase in imports of seismic data services during the investigated period. Second Remand Investigative Report at SAR593–94. Declining to adopt the court's interpretation of the statute as requiring that it consider imports of seismic data services to be "like" imported articles, Labor nonetheless considered whether there had been an increase in seismic data services here and found that the record evidence "reveals that the subject firm and its customers did not import seismic data services." Id.; Second Remand Results at 11–12. Because Labor reasonably determined that there had not been an absolute decline in sales, the court need not reach this issue, other than to say that Labor complied with the court's remand order. See Former Employees, 41 CIT at __, 219 F. Supp. 3d at 1402–07, 1410.

at __, 219 F. Supp. 3d at 1407–08.  The court emphasized that, although Geokinetics'

questionnaire response indicated that the firm had not imported or acquired from a foreign

country like or directly competitive articles, see id., 41 CIT at __, 219 F. Supp. 3d at 1407,

it was "not at all clear that Geokinetics understood the full import of Labor's question given

Labor's shift in its approach to consider Geokinetics a producer of an article rather than

a provider of services."  Id., 41 CIT at __, 219 F. Supp. 3d at 1408.  The court ordered

that Labor make its methodology more clear and, if it was in fact excluding consideration

of seismic data services from the analysis, explain why doing so is reasonable.  Id., 41

CIT at __, 219 F. Supp. 3d at 1407–08.

In order to qualify for adjustment assistance certification under the shift in

production or services path, Labor must initially determine that "a significant number or

proportion of the workers . . . [at the subject] firm have become totally or partially

separated, or are threatened to become totally or partially separated[.]"  See 19 U.S.C.

§ 2272(a)(1).  If that initial requirement is met, the statute further requires that Labor

consider either (1) whether there has been a shift "in the production of articles or the

supply of services like or directly competitive with the articles produced or services"

supplied by the subject firm to a foreign country, or (2) whether the subject firm "has

acquired from a foreign country articles or services that are like or directly competitive

with articles" which it produces or services it supplies.  19 U.S.C. § 2272(a)(2)(B)(i)(I), (II).

In either case, Labor must then determine that such a shift "contributed importantly" to

the workers' separation or threat of separation from the subject firm.  Id.

§ 2272(a)(2)(B)(ii).

On second remand, Labor again determined that Geokinetics had not shifted its

seismic data services.   Second Remand Investigative Report at SAR595; <u>see also</u>

<u>Second Remand Results</u> at 11–13.[6]   Indeed, Geokinetics again reported that it had not

shifted its services (which it described in the same questionnaire as "[g]eophysical

[s]urveying and [m]apping [s]ervices") to another country or countries.   [Second Remand]

Business Data Request, TA-W-90, 092 at SAR98–99 ("Second Remand BDR Resp.").

In the Investigative Report, Labor explained that

> [t]he investigation revealed that the subject firm did not shift its services,
> which are considered to be the production of articles directly competitive
> with imports of oil and with imports of natural gas, or any like or directly
> competitive articles to a foreign country, or contract to have oil and natural
> gas or a like or directly competitive article, produced in a foreign country.
> The subject firm responded that it had not imported or acquired from a
> foreign country services like or directly competitive with the services
> supplied by the subject firm, and likewise had not shifted like or directly
> competitive series to another country.

Second Remand Investigative Report at SAR595 (citation omitted).   Further, "based on

information provided by the U.S. Geological Survey[,] seismic data services are primarily

---

[6] In the <u>Second Remand Results</u>, Labor notes that "the investigation revealed that the firm did not shift the production of oil or natural gas or a like or directly competitive article to a foreign country or acquire oil or natural gas or a like or directly competitive article from a foreign country." <u>Second Remand Results</u> at 12–13.   Defendant emphasizes that, although the <u>Second Remand Results</u> erroneously referred to "like or directly competitive article[s]," rather than the supply of services, "the record clearly demonstrates that Labor sought information about <u>services</u> like or directly competitive with Geokinetics's <u>services</u>[.]"   Def.'s 2nd Remand Comments at 27 n.7 (emphases in original) (citing blank BDR sent to Geokinetics during the second remand proceedings at SAR7 (attached to Email between [DOL Analyst] and [Geokinetics' General Counsel] attached BDR Service Cover Letter and ETA-9043b - Business Data Request (Service) form, May 01, 2017 12:18 PM at SAR1–11)).   The court agrees with Defendant that, throughout the second remand proceedings, Labor was clear that the agency was requesting information about a shift in services. <u>See</u> [Second Remand] Business Data Request, TA-W-90, 092 at SAR99; <u>see also</u> Email between [DOL Analyst] and [Geokinetics' General Counsel], attached Public Version of the Court's April 11, 2017 Order (ECF No. 34), May 02, 2017 4:01 PM at SAR12.

provided on location and therefore import of these services would involve only those aspects of the work that can be accomplished remotely."  Second Remand Investigative Report at SAR595.

In the course of the second remanding proceedings, Labor took steps to ensure that Geokinetics understood that it was to report whether the firm had or planned to shift seismic data services to a foreign country or countries.  See Def.'s Resp. Pls.' Comments on [Labor]'s Second Remand Results at 25–27, Dec. 12, 2017, ECF No. 47 ("Def.'s 2nd Remand Comments").  In particular, the email correspondence during these proceedings demonstrates that Labor shared the court's opinion with Geokinetics' General Counsel.  See Email between [DOL Analyst], and [Geokinetics' General Counsel], attached Public Version of the Court's April 11, 2017 Order (ECF No. 34), May 02, 2017 4:01 PM at SAR12.  Labor thus effectively ensured that Geokinetics was informed of the court's concern that Labor had not made clear, on first remand, that it was requesting from Geokinetics information on any shift in seismic data services.  Because Labor clarified its inquiry in this way, and emphasized in this context that seismic data services are primarily provided on-site such that a shift would not be feasible, Second Remand Results at 6; Second Remand Investigative Report at SAR591, Labor has, on second remand, satisfied the court's request and complied with the court's order.  See Former Employees, 41 CIT at __, 219 F. Supp. 3d at 1407–08, 1410.

Plaintiffs argue that Labor has not sufficiently explained "why it is reasonable to ignore imports of seismic data services as like the [sic] services in evaluating whether the subject firm shifted like services to foreign countries and whether the subject firm acquired

from a foreign country like services." Pls.' 2nd Remand Comments at 13. Plaintiffs contend that this insufficient explanation renders Labor's determination unsupported by substantial evidence and not in compliance with the court's remand order. Id. at 13–14. However, it is evident from the record that Labor did not ignore imports of seismic data services in this analysis. See Second Remand Investigative Report at SAR595. It is also reasonably discernible from the record documents that Geokinetics was on notice during the second remand proceeding that Labor was seeking information on any shift in seismic data services. See Email between [DOL Analyst] and [Geokinetics' General Counsel], attached Public Version of the Court's April 11, 2017 Order (ECF No. 34), May 02, 2017 4:01 PM at SAR12. No information has been put forward to suggest that, notwithstanding Geokinetics' response, the company did shift its services to a foreign country or countries. In light of Labor's clarification, and absent information to suggest that Geokinetics' response was inaccurate, it was reasonable for Labor to accept as accurate Geokinetics' response in the second remand questionnaire that it did not shift its services or expect an upcoming shift in services to foreign companies. Labor's determination based on that response was reasonable, and Plaintiffs' arguments to the contrary are unpersuasive.

### III. Secondary Worker Benefits

In Former Employees, the court remanded the issue of whether the separated workers are not eligible to be certified as adversely affected secondary workers pursuant to 19 U.S.C. § 2272(b), concluding that "Labor's determination that Geokinetics is not a supplier or downstream producer to a firm whose workers received primary worker TAA certification is unreasonable because it is based upon Geokinetics' incomplete responses

to Labor's Second BDR questionnaire." <u>Former Employees</u>, 41 CIT at __, 219 F. Supp.

3d at 1409.  The court ordered that, on second remand, "Labor must explain what other

evidence on the record supports its determination, inquire further to develop record

information to support its determination, or reconsider its determination." <u>Id.</u>

To certify a secondary worker as eligible to apply for TAA benefits pursuant to 19

U.S.C. § 2272(b), Labor must find that one of the following is true: "the workers' firm is a

supplier and the component parts it supplied to the [client] firm accounted for at least 20

percent of the production or sales of the workers' firm[,]" or "a loss of business by the

workers' firm with the [client] firm contributed importantly to the workers' separation or

threat of separation . . . ."  19 U.S.C. § 2272(b)(3)(A)–(B).  Both paths of this provision

reveal that, for the subject firm's workers to be eligible for secondary assistance based

on involvement with a client firm whose workers are eligible for adjustment assistance

benefits, that client firm must be of some significance to the subject firm.   Both

subsections ensure a meaningful connection between the separations at a client firm and

the separations at the subject firm.

Here, on second remand, Labor again concluded that separated workers are not

eligible to be certified as adversely affected secondary workers pursuant to 19 U.S.C.

§ 2272(b) because "the investigation revealed that Geokinetics, Inc., Houston, Texas, is

not a Supplier nor does it act as a Downstream Producer to a firm that employed a group

of workers who received a certification of eligibility under []19 U.S.C. § 2272(a)," adding

that, "[i]n fact, none of the subject firm's customers were [t]rade certified." <u>Second</u>

Remand Results at 13.  Labor does not provide a citation to evidentiary support for this

statement.  However, the Investigative Report states:

> The second remand investigation also revealed that worker separations
> were not caused by a loss experienced by a customer whose workers were
> certified eligible to apply for TAA. Furthermore, the subject firm is not a
> Supplier nor does it act as a Downstream Producer to a firm whose workers
> were certified eligible to apply for TAA. Furthermore, none of Geokinetics,
> Inc., Houston, Texas, major customers were listed as trade certified.

Second Remand Investigative Report at SAR598–99 (citation omitted).  Labor concluded

that none of Geokinetics' major customers were listed as trade certified after "a search

conducted of OTAA's [Management Information Systems] database."  Id. at SAR599

n.34; see Def.'s 2nd Remand Comments at 29–30.

      Labor's conclusion as to secondary workers on second remand is supported by

substantial evidence.  It is reasonably discernible from a review of the record that Labor

conducted a search of the firms included in Geokinetics' comprehensive client list and

determined that none of the client firms had been certified as eligible for adjustment

assistance.  The questionnaire asks the respondent firm whether "the subject suppl[ies]

services to a firm whose workers have been certified under the TAA program[.]"  See

Second Remand BDR Resp. at SAR101.  In its second remand questionnaire response,

as in the first remand questionnaire response, Geokinetics did not provide a response to

this question.  See Second Remand BDR Resp. at SAR101; see also Geokinetics First

Remand BDR Resp., attached to Email between [DOL Analyst]) and [Geokinetics'

General Counsel], May 02, 2017 4:53 PM at SAR69.  Labor subsequently sent

Geokinetics' General Counsel an email requesting an answer to the question.  Email

between [Geokinetics' General Counsel] and [DOL Analyst], June 08, 2017 3:47 PM at

SAR105.  Geokinetics' General Counsel responded: "Unfortunately, this is a not a data

point that we track regarding our clients." Id.  No additional emails directly related to this

question appear in the record.   Nonetheless, in an email sent two minutes later in

response to an earlier request by Labor in the same email chain,[7] Geokinetics' General

Counsel provided Labor with a list of its clients.  Email between [Geokinetics' General

Counsel] and [DOL Analyst], attached Excel spreadsheet list of customers, June 08, 2017

3:49 PM at SAR106–09 ("June 8 Emails Re Customer Info").    Labor subsequently

requested additional follow-up information and details on Geokinetics' total revenue

breakdown and top customers by sales figures for the relevant periods in 2014 and 2015,

and information on Geokinetics' clients attributing to the firm's declining sales figures in

2015.[8]  See Emails between [DOL Analyst], [Geokinetics' General Counsel], and [Ms. Z,

Geokinetics' Manager, Process and Controls], June 20, 2017–July 26, 2017 at SAR114–

68.   Further,  Labor  also  collected  business  data  directly  from  Geokinetics'  "major

---

[7] Labor informed Geokinetics' General Counsel that "[i]n order to move the case forward additional [information] is required," including "a list of customers from the relevant time periods (Jan-July 2014 and Jan-July 2015)[.]"  Email between [Geokinetics' General Counsel] and [DOL Analyst], attached Excel spreadsheet list of customers, June 08, 2017 3:49 PM at SAR106–07.  Labor, in a subsequent email, clarified that "[w]e do need the time frames and dollar amount from the top ten US declining customers as requested on page 5 of the Business Data Request," Email between [Geokinetics' General Counsel] and [DOL Analyst], June 16, 2017 3:07 PM at SAR110, and requested additional follow-up information and details on the major clients with declining figures.   See Emails between [DOL Analyst], [Geokinetics' General Counsel], and [Ms. Z, Geokinetics' Manager, Process and Controls], June 20, 2017–July 26, 2017 at SAR114–68.

[8] Labor's requests for information were focused on Geokinetics' U.S. customers because certification as adversely affected secondary workers depends upon involvement with a firm that received trade adjustment assistance; adjustment assistance is limited to U.S. firms.  See 19 U.S.C. §§ 2271(a), 2272(b).

customers," Second Remand Results at 12 (citing Emails between [DOL Analyst] and

[Customers A–X], with completed Business Customer Survey and Business Bid Surveys

attached, at SAR171–552), including the client firms that Geokinetics reported were

responsible for a significant proportion of its decline in sales in 2015.  See Email between

[Ms. Z], Geokinetics' Manager, Process and Controls, and [DOL Analyst], with attached

declining customer information, July 11, 2017 2:48 PM at SAR142 ("July 11 Email with

Declining Customer Info."); Emails between [DOL Analyst] and [Customers A–X], with

completed Business Customer Survey and Business Bid Surveys attached, at SAR171–

552.  It is discernible from these requests and correspondence that Labor searched the

MIS database on at least these firms, if not all of the firms provided in Geokinetics' client

list.[9]  Accordingly, even if Labor only searched its database for information related to these

"major clients," Second Remand Investigative Report at SAR598–99, the top client firms

by revenue and the firms responsible for the decline in sales, the statute's requirement

under either path of 19 U.S.C. § 2272(b)(3), that the client firm be of significance to the

subject firm to certify the subject firm's workers as eligible to apply for TAA benefits as

secondary workers, is satisfied.

Plaintiffs argue that Labor's conclusion is unsupported by substantial evidence

because it is unclear who the "major customers" surveyed are or why the analysis was

limited to them.  See Pls.' 2nd Remand Comments at 14–15.  Although Plaintiffs are

---

[9]  The list provided by Geokinetics include more than [[    ]] domestic and international
customers.  See June 8 Emails Re Customer Info. at SAR108–09; Def.'s 2nd Remand Comments
at 28.

correct that it is unclear who Geokinetics' major customers were, a review of the record demonstrates that Labor repeatedly asked for information on Geokinetics' customers accounting for the majority of the firm's decline in the investigated period, and that Labor requested (and received) figures and contact information for the top five customers by revenue for January through June 2014 and 2015.   <u>See</u> Emails between [Ms. Z], Geokinetics' Manager, Process and Controls, and [DOL Analyst], with attached Excel spreadsheet list of largest customers, July 06, 2017 11:33 AM at SAR120–26; July 11 Email with Declining Customer Info. at SAR142.  Geokinetics provided information on the clients who were responsible for the majority of the firm's sales decline in the months investigated by Labor in 2015.[10]   <u>See</u> July 11 Email with Declining Customer Info. at SAR142.  These client firms would be those for which "a loss of business by the workers' firm with the [client firm] contributed importantly to the workers' separation or threat of separation . . . ." 19 U.S.C. § 2272(b)(3)(B).  Geokinetics' sales with other client firms did not decline significantly in the relevant period.[11]   <u>See</u> July 11 Email with Declining Customer Info. at SAR142.  As Defendant asserts, pursuant to the statute, because, "before plaintiffs may be certified as secondary workers, the statute requires that the firm to which Geokinetics supplies services must have accounted for at least 20 percent of its

---

[10] According to the figures provided to Labor by Geokinetics, these client firms accounted for, respectively, [[        ]]%, [[        ]]%, [[        ]]%, and [[        ]]% (and, collectively, [[    ]]%) of the decline in sales experienced by Geokinetics during the review period.  <u>See</u> July 11 Email with Declining Customer Info. at SAR142.

[11] Specifically, according to the figures provided to Labor by Geokinetics, Geokinetics did not lose more than [[        ]]% of its sales to any other firm.  <u>See</u> July 11 Email with Declining Customer Info. at SAR142.

sales or otherwise contributed importantly to the workers' separation," here, "even if Labor's search had been limited to 'major' customers, its methodology would have been reasonable under the statute." Def.'s 2nd Remand Comments at 29 n.8. Further, Labor explains that, "[d]uring the course of the second remand investigation, information was collected from . . . the workers' firm's major customers[.]" Second Remand Results at 12 (citing Emails between [DOL Analyst] and [Customers A–X], with completed Business Customer Survey and Business Bid Surveys attached, at SAR171–552). The cited documents in the administrative record include business information for more than ten of Geokinetics' customers, including those responsible for the majority of the decline in sales. See Second Remand Results at 7, 12; July 11 Email with Declining Customer Info. at SAR142. Although it is not stated expressly, it is reasonably discernible that Labor included these client firms in its search of the MIS database and that none of the "major customers" searched were listed as trade certified. See Second Remand Investigative Report at SAR599 n.34.

Plaintiffs contend that "[t]here are no 'MIS database' search results provided in the [Supplemental Agency Record]; no explanation of what the MIS database is . . .; and no explanation why such search was limited to just major customers (or how such customers were selected and how many of the total numbers of customers)." Id. Although Plaintiffs are correct that the search results are not included in the administrative record documents, as discussed above, it is reasonably discernible that Labor searched the MIS database for information regarding whether any of its top clients by revenue and clients responsible for the majority of the decline in sales had been trade certified. See Second

Remand Investigative Report at SAR599; Emails between [DOL Analyst], [Geokinetics'

General Counsel], and [Geokinetics' Manager, Process and Controls], June 20, 2017–

July 26, 2017 at SAR114–68.  As these clients accounted for a significant percentage[12]

of the decline in sales that Geokinetics experienced over the review period, <u>see</u> July 11

Email with Declining Customer Info at SAR139–44, these clients are the clients with the

ability to contribute importantly to the workers' separation or threat of separation, the

inquiry of concern pursuant to the statute.  <u>See</u> 19 U.S.C. § 2272(b)(3)(A)–(B).  Without

specific allegations that Labor did not in fact search its database for information about

Geokinetics' major clients, Plaintiffs' argument is unpersuasive.

## CONCLUSION

For the foregoing reasons, the Department of Labor's <u>Second Remand Results</u>

comply with the court's remand order.  <u>See</u> <u>Former Employees</u>, 41 CIT at __, 219 F.

Supp. 3d at 1394, 1410.  The <u>Second Remand Results</u> are supported by substantial

evidence, and they are therefore sustained.  Judgment will enter accordingly.


                                                          <u> /s/ Claire R. Kelly  </u>
                                                          Claire R. Kelly, Judge


Dated: February 16, 2018
          New York, New York

---

[12] Specifically, according to the figures provided by Geokinetics to Labor, these clients accounted
for close to [[        ]] of the decline in sales that Geokinetics experienced over the review period.
<u>See</u> July 11 Email with Declining Customer Info. at SAR139–44.